UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
D.D.T.,

                Petitioner,

      v.

RAUL MALDONADO, JR., *et al.*,

                Respondents.
----------------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**
26-CV-3245 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On May 29, 2026, D.D.T. ("Petitioner") filed a petition for a writ of habeas corpus against Raul Maldonado, Jr., in his official capacity as warden of Metropolitan Detention Center; LaDeon Francis, in his official capacity as Acting Field Office Director of New York Immigration and Customs Enforcement ("ICE"); Markwayne Mullin,[1] in his official capacity as the Secretary of Homeland Security; and Todd Blanche, in his official capacity as Attorney General (collectively, "Respondents"). *See generally* Verified Petition for Writ of Habeas Corpus, Dkt. 1 ("Petition" or "Pet."). Petitioner seeks his immediate release and challenges the lawfulness of his ongoing detention by ICE under the Fifth Amendment of the U.S. Constitution ("Fifth Amendment"), the Administrative Procedure Act, the Immigration and Nationality Act ("INA"), and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *Id.* ¶¶ 39-60.

For the following reasons, Petitioner's request for immediate release is granted.

## BACKGROUND

Petitioner is a native of Mali, where he was born into slavery. *Id.* ¶ 15. He entered the United States unlawfully in November 2023. *See* Declaration of Mincheol So ¶ 3, Dkt. 7-1 ("So

---

[1] The Petition incorrectly names "Markwayne Mullins" as a Respondent rather than Markwayne Mullin. Pet. ¶ 13. This misnomer is disregarded as it does not affect the parties' substantial rights. *See* FED. R. CIV. P. 25(d).

Decl."). Petitioner was taken into custody by United States Customs and Border Protection ("CBP") following his entry, and he provided CBP with a birth certificate reflecting a 2004 date of birth, meaning he was 19 years old at the time. *Id.* Petitioner was subsequently placed in removal proceedings and released from custody on an order of recognizance due to lack of bed space. *Id.* ¶¶ 4-5.

In April 2024, Petitioner's counsel raised concerns with the Immigration Court that Petitioner was under the age of 18. *Id.* ¶ 6. Several months later, Petitioner's counsel provided ICE with a second birth certificate, which reflected that Petitioner was born in 2009. *Id.* ¶ 7. As this new document indicated that Petitioner was 14 years old, he was deemed an Unaccompanied Alien Child ("UAC"). *Id.* Pursuant to the protocols for UACs established under 8 U.S.C. § 1232(b)(3), Petitioner was placed in the custody of the Office of Refugee Resettlement ("ORR"), a division of the Department of Health and Human Services ("HHS"), on August 28, 2024. *Id.* ¶ 9.

Petitioner was transferred to an ORR-funded care provider in New York, New York, in August 2025. *Id.* ¶ 12. In early April 2026, ORR provided ICE with an Age Re-Determination Memorandum reflecting that ORR had determined that Petitioner was an adult with a 2004 date of birth. *Id.* ¶ 15. ORR's age re-determination relied on a communication from the Mali Consulate confirming Petitioner's 2004 date of birth as well as a dental age assessment. *Id.* ¶ 15. As Petitioner was confirmed to be an adult, ORR requested that Petitioner be transferred from its custody. *Id.*

On April 7, 2026, ICE arrested Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. *Id.* ¶ 16; *see* So Decl., Exhibit I, Dkt. 8-10. That same day, ICE prepared a Form I-286 Notice of Custody Determination. So Decl., Exhibit K, Dkt. 8-12. ICE additionally prepared an

INA § 236(a) Initial Custody Determination worksheet, which states that Petitioner had established that he was neither dangerous nor a flight risk. *See* So Decl., Exhibit L at 1-2, Dkt. 8-13 ("April Custody Determination"). Nevertheless, ICE asserts it detained Petitioner at that time pursuant to the mandatory detention authority of 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)"). So Decl. ¶ 16.

On May 12, 2026, following the Second Circuit's decision in *Barbosa da Cunha v. Freden,* 175 F.4th 61 (2d Cir. 2026), ICE conducted another custody determination. ICE completed another Form I-286 Notice of Custody Determination and INA § 236(a) Initial Custody Determination worksheet, which indicate that Petitioner established he was not a danger to persons or property. *See* So Decl., Exhibit M at 1-2, Dkt. 8-14 ("May Custody Determination"). However, the forms simultaneously note that Petitioner did not establish he did not pose a risk of flight. *See id.* at 2. In other words, ICE determined that Petitioner did pose a flight risk, specifically, due to his lack of community ties. *Id.* This time, ICE asserts that assessment was made under 8 U.S.C. § 1226(a) ("Section 1226(a)"). So Decl. ¶ 19.

Petitioner is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). *Id.* ¶ 22.

## DISCUSSION

Petitioner asserts that ICE violated his due process rights by failing to engage in the required individualized custody determination prior to, or contemporaneously with, the initial decision to detain him. *See* Letter from Petitioner to the Court (June 4, 2026), Dkt. 10 ("Pet'r Reply"). In opposition, Respondent contends that this Court is jurisdictionally barred from reviewing ICE's custody determination under 8 U.S.C. § 1226(e) ("Section 1226(e)") and to the extent this Court has jurisdiction, Petitioner must exhaust administrative remedies before seeking

3

district court intervention. *See* Letter from Respondents to the Court (June 4, 2026), Dkt. 11 ("Resp'ts Reply"). The Court addresses each argument in turn.

## A. Jurisdiction

As an initial matter, this Court is not jurisdictionally barred from analyzing the due process issue raised in the Petition. Respondents correctly note that "Section 1226(e) provides that '[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review,'" Resp'ts Reply at 1 (quoting 8 U.S.C. § 1226(e)), but Section 1226(e) does not bar review of the procedures used and whether Petitioner's detention comports with due process, *see Quille v. Blanche*, 26-CV-2818 (HG), 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026); *Cajamarca-Janza v. Soto*, 26-CV-3066 (HG), 2026 WL 1506777, at *3 (E.D.N.Y. May 29, 2026); *Pastrana-Beltran*, 2026 WL 1398609, at *3 ("Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001))).

## B. Administrative Exhaustion

Administrative exhaustion similarly does not prohibit this Court's review. Exhaustion is a "prudential matter," and courts in this Circuit have excused exhaustion when "available remedies provide no genuine opportunity for adequate relief." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. U.S.*, 88 F.3d 1280. 1288 (2d Cir 1996)). As this Court has held previously, post-deprivation review in the form of a bond hearing and appellate review of that bond determination is inadequate to remedy a detention that is unlawful from its inception. *See J.U. v. Maldonado*, 805 F. Supp. 3d 482, 490 (E.D.N.Y. 2025); *Artiga v. Genalo*, 25-CV-5208 (OEM), 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025); *Acuapan v. Bondi*, 26-CV-384, 2026 WL

507889, at *3 (E.D.N.Y. Feb. 24, 2026); *see also Chipantiza-Sisalema v. Francis*, 25 Civ. 5528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y July 13, 2025) (stating that a bond hearing "is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause" (quoting *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018))).

### C. Due Process

Turning to Petitioner's due process argument, Respondents concede that Petitioner is detained pursuant to Section 1226(a). Letter from Respondents to the Court (June 4, 2026), Dkt. 7; *see da Cunha*, 175 F.4th at 69. Section 1226(a) provides, in pertinent part, that

> . . . an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole.

8 U.S.C. § 1226(a). The statute affords arrested aliens "an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." *Pastrana-Beltran v. Mullin*, 26-CV-2657 (RER), 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing *da Cunha*, 175 F.4th at 72); *see also* 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1); *Lopez Benitez v. Francis*, 795 F. Supp, 3d 475, 492-93 (S.D.N.Y. 2025) ("[B]efore the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an

individualized custody determination.'" (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, 20-2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020))).

Whether Respondents' actions pursuant to Section 1226(a) comported with the principles of due process is governed by the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews* to determine the adequacy of process in the context of civil immigration confinement). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

With respect to the second prong of the *Mathews* test, Respondents' procedure presents a high risk of erroneous deprivation. "The purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez*, 795 F. Supp. 3d at 495;

*see also id.* at 497 (explaining that ICE must "engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause"). Here, there was no exercise of discretion prior to, or contemporaneously with, the decision to detain Petitioner on April 7, 2026. The custody determination form completed on the day of Petitioner's arrest indicates that ICE found Petitioner to be neither a flight risk nor danger. *See* April Custody Determination. Thus, the contemporaneous determination reflected no grounds to detain him. However, still operating under the mandatory detention authority of Section 1225(b)(2)(A), ICE detained him anyway. *See* So Decl. ¶ 16. Accordingly, as no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner, the risk of erroneous deprivation is high.

Respondents' attempt to "cure" the procedural failure of the initial arrest and detention weeks later is unavailing. Respondents contend that ICE is now lawfully detaining Petitioner under Section 1226(a), as it conducted an individualized custody determination on May 12, 2026, that considered Petitioner's lack of community ties and accordingly found that he had not established that he did not pose a risk of flight. Resp'ts Reply at 2; *see* May Custody Determination. Yet, Respondents have cited no changed circumstances as to Petitioner that would warrant a new finding as to his risk of flight. "[A]n executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards." *Inestroza Carbajal v. Frazier*, 26-CV-2778-SJB, 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) (collecting cases); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that "[a]n agency must defend its actions based on the reasons it gave when it acted," and may not rely on "impermissible *post hoc* rationalizations" (quotation omitted)). Allowing the contrary "would permit Respondents to flout

the demands of due process and the regulations governing initial custody determinations." *S.G.V. v. Genalo*, 26-CV-2893 (PKC), 2026 WL 1492770, at *2 (E.D.N.Y. May 28, 2026). This Court is not alone in rejecting attempts to recharacterize an initially unlawful detention as a lawful one, *see id.* ("Respondent's proffered custody redetermination cannot cure the violation of Petitioner's due process rights at the time of arrest. The appropriate remedy, in such situations, is release."); *Inestroza Carbajal*, 2026 WL 1309265, at *1-4 (rejecting the respondents' argument that "what began and continued as an illegal detention, became legal because they have found a different source of legal authority"); *Pastrana-Beltran*, 2026 WL 1398609, at *2 ("Respondent cannot create a post hoc rationalization for [petitioner's] detention. . . . To argue that [petitioner] was detained under one statutory provision but may be continuously detained under another since the Circuit ruled the first one inapplicable, is exactly the kind of post hoc rationalization that the Supreme Court deemed impermissible." (citing *Regents of the Univ. of Cal.*, 591 U.S. at 22 (2020))).

With respect to the third *Mathews* prong, Respondents' interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, there was no initial determination as to the need to detain Petitioner as he was presumed subject to mandatory detention under Section 1225(b)(2)(A). So Decl. ¶ 16. "Allowing for a custody determination . . . weeks later does not advance any legitimate governmental purpose, since the only reason for the delay was the Government's decision to use a process deemed illegal by the Court of Appeals." *Inestroza Carbajal*, 2026 WL 1309265, at *4.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219. Given the deprivation of Petitioner's liberty, the absence of deliberative process when he was initially detained, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.[2]

## CONCLUSION

For the foregoing reasons, Petitioner's request for immediate release from custody is granted. When releasing Petitioner, Respondents may not impose additional conditions of release such as electronic or ankle monitoring without an individualized determination. *See Khabazha v. U.S. Immigr. and Customs Enf't*, 25-CV-05279 (JMF), 2025 WL 3281514, at *3 (S.D.N.Y. Nov. 25, 2025) (first citing *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017); and then citing *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973)) (concluding that electronic monitoring and ankle monitoring amount to custody for habeas purposes). By June 10, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

The Clerk of Court is directed to enter judgment in accordance with this order and close this case.

SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge

June 9, 2026
Brooklyn, New York

---

[2] Because the Court determines that Petitioner's detention violates his due process rights, it need not address his remaining claims. *See, e.g.*, *Valdez*, 803 F. Supp. 3d at 217 n.4 (declining to address remaining claims after determining that the petitioner's detention violated due process).